BERTIE TOLAR SUTTON v. ERNEST W. SUTTON.

Western Section.   October 16, 1926.

No petition for Certiorari was filed.

1. **Appeal and error.   Rehearing.**
    A rehearing will be granted where the judgment was affirmed because the appeal was not perfected in time, where it is shown that the file mark of the clerk is erroneous and that the appeal was in fact perfected within the time.

2. **Evidence.   Adultery.   Adultery may be established by circumstantial evidence.**
    The prevailing rule is that adultery need be proven only by the preponderance of the evidence and it is error to instruct that adultery must be shown by evidence which is clear, cogent and convincing.

3. **Divorce.   Adultery may be established by preponderance of the evidence.**
    To justify divorce for adultery, a perponderance of the facts is sufficient; it need not be clear, cogent and convincing.

Appeal from Chancery Court, of Shelby County; Hon. Wightman Hughes, Chancellor.

Reversed and Remanded.

Clyde H. Koen, of Memphis, for appellant.

A. B. Case, of Memphis, for appellee.

OWEN, J.   The decree of the lower court was affirmed on February 4, 1927, because it appeared that the bill of exceptions was filed beyond the time allowed by the Chancellor, it having been filed September 17, 1926, which was more than forty days after the final decree. A petition to rehear was filed February 11, 1927, and it appears from this petition and from the certificate and affidavit of the clerk and master of the chancery court of Shelby county that the date of filing the bill of exceptions, as shown by the transcript, is a typographical error, and that the bill of exceptions was actually filed August 17, 1926, instead of September 17, 1926, and that the word "September" was erroneously and incorrectly used for the word "August" in making up the transcript.

Upon this showing the petition to rehear is granted.   The decree of this court in this case is set aside and for nothing held, and the cause will be disposed of upon its merits as it appears now that the bill of exceptions was actually filed within proper time.

This is a divorce proceeding. Complainant filed her bill seeking a divorce on the ground of abandonment and non-support. The original bill was filed August 6, 1925. It appears that complainant and defendant were married at Heber Springs, Arkansas, December 26, 1912; that they moved to Memphis, Tennessee, about the 15th of November, 1922, and it was alleged that complainant was abandoned August 1, 1924. The bill did not seek any alimony or counsel fees. There was nothing said in the bill about any child having been born as a result of the marriage of complainant and defendant. On February 9, 1926, the defendant filed an answer denying complainant's charges, and by way of cross-bill cross-complainant charged that the cross-defendant deserted him in Memphis, Tennessee, about June 1, 1924, and that since said date she had been living out of the State of Tennessee and had been traveling around in the states of Arkansas and Oklahoma with a man by the name of A. R. Jones, and that she and Jones had registered at different hotels in Arkansas, and especially in Searcy, Arkansas, as man and wife, and cross-complainant charged that the complainant and cross-defendant had been guilty of committing adultery with A. R. Jones, and that she was living an adulterous life with A. R. Jones, and had so lived since June 21, 1924. Cross-complainant stated that one child had been born to complainant and defendant, Ernest W. Sutton, Jr., who was eight years of age, and that said child is now in the care and custody of cross-complainant, and the cross-bill alleged that the cross-defendant was not a proper party to have the care and custody of this child. The cross-bill prayed for a divorce and for the care and custody of the said child. Complainant amended her bill by asking for the care and custody of the child, Ernest W. Sutton, Jr., and also amended her bill by charging that the defendant and cross-complainant was guilty of cruel and inhuman treatment by having unjustly and wrongfully charged her with adultery. She denied in her answer to the cross-bill cross complainants allegations of adultery. She denied that she had ever registered at any hotel at Searcy, Arkansas, or elsewhere as the wife of one A. R. Jones, and that if she was so registered it was without her knowledge or consent, and that was wholly against her wishes. She admitted that she had been out of the State a great deal since June 1, 1924; that it was necessary for her to secure employment where she could, and when not employed she had to live with relatives both in the State of Arkansas and State of Oklahoma. Numerous depositions were taken and a number of witnesses testified in open court before the Chancellor, and the Chancellor dismissed cross-complainant's bill and allowed complainant a divorce from bed and board. It appears that the Chancellor examined the little boy Ernest and found him to be a very bright child. He was being boarded by his father in the

home of a Mrs. Knight in Memphis, Tennessee, and was being sent regularly to the public schools of Memphis and to Sunday school and church services. The record indicates that Mrs. Knight is a woman of good character and is taking good care of this child. The court decreed that the child should remain with the father from the first of September until the first of June, or about nine months in each year; that during vacation time he could spend same with his mother, and while he was with his mother cross-complainant or defendant should pay $40 per month for the maintenance and support of the child, paying this to the child's mother; that the cause should be retained in court subject to the further orders of the court and for the purpose of enforcing the decree. Within a few days thereafter that decree was vacated, set aside, and the final decree dismissed complainant's bill outright; but in substance revived and renewed an order in regard to the care and custody of the child and as to the payments to be made by the father to the mother from the first of June to the 15th of September of each year, and retaining the cause in court.

The defendant and cross-complainant excepted to this action, prayed and was granted an appeal, perfected the same, and has assigned as error the action of the court in dismissing the cross-bill of the defendant and in giving cross-complainant absolute care and custody of the child, Ernest W. Sutton, Jr., for any period.

The proof in the record indicates that the cross-complainant is a traveling salesman; that he sells automobile casings, or tires; that his character is good. As to complainant's character, a number of witnesses testify that her character for morality and virtue, truth and veracity, is good, while two witnesses testify that it is bad. The proof establishes the fact that, while complainant lived in Memphis prior to her desertion or abandonment of the defendant about June 1, 1924, she did not love or care for the defendant, and the complainant would frequently stay away from home during the afternoons and until late at night, and she would leave her little son with negro servants. Sometimes the child would have to sleep out in the yard in the servant's quarters while his mother would be away. There is also proof establishing the fact that the complainant drove home late at night accompanied by a man. The complainant met one A. R. Jones a short time before she deserted or abandoned defendant. The defendant testified, and it is not disputed, that while he was out on one of his trips complainant left their home in Memphis, Tennessee, and soon after June 1, 1924, he received a letter from his wife, from Searcy, Arkansas, stating that she had sub-rented their apartment and that she did not intend to return to Memphis to live. The defendant went to Searcy, Arkansas, and visited his wife, July 4, 1924, spending four or five days with complainant, urging and begging her

to return to Memphis and resume her marital relations for their child's sake. The complainant refused to return to ·Memphis and told the defendant that she would not live with him and that she did not want to ruin both of their lives by continuing to live with him. The defendant introduced certain letters from the complainant, which we find in the transcript, which bears out his statement and corroborates him, that the complainant would not live with him and that it was useless for them to try to live together. The defendant testified that later when he visited the town of Searcy, ·Arkansas, he learned that the complainant had been in said town with A. R. Jones, and that they had registered at the Mayfair Hotel as man and wife. The defendant testified that for the first two or three months after the complainant left him he sent her money each month, but after she wrote him she would not live with him any more, or have anything further to do with him, he discontinued sending her money. He testified that during the time he and the complainant lived together that he always turned his salary check over to complainant, and while he drew each year a bonus from his firm, that he gave his wife a part of the bonus money.

The complainant does not dispute or deny any of this testimony. Her testimony consists, in the main, in an explanation of her conduct in traveling around over the State of Arkansas with A. R. Jones. It appears that A. R. Jones is about fifty-three years of age; that he is an oil promoter and that he employed complainant to act as chauffeur and upon entering a town in Arkansas she would go to the Register's Office, or the office of the Recorder of Deeds and look up abstracts upon certain land he was seeking to lease; that she would examine the titles and see if there were any liens upon the property he was endeavoring to lease for oil purposes. Jones testified that the automobile used was the complainants and that he paid her so much mileage for driving him around to different towns. The proof shows that Mrs. Sutton had never worked for anyone prior to becoming the abstractor and examiner of titles and chauffeur for A. R. Jones. On October 9, 1925, it appears that the complainant and A. R. Jones spent the night at the Mayfair Hotel in Searcy, Arkansas. On the register of said hotel at that date there appears the name of "Mr. and Mrs. A. R. Jones, assigned room 217." This hotel was managed by Mr. and Mrs. R. H. Branch. It appears that Mr. Branch, who was fifty-two years of age, is a traveling salesman, and he informed defendant shortly after the complainant and Jones stopped at the hotel of their conduct on the date of Friday, October 9, 1925. The complainant testified that she spent the night in Room 217, but no one else occupied the room with her and that she knew nothing about having registered as Mrs. A. R. Jones. She did not register as Mrs. Sutton. It appears that the only registering of these

two parties—A. R. Jones and Mrs. Sutton—was "Mr. and Mrs. A. R. Jones, room 217."

Jones testified that he had been in the town of Searcy, Arkansas, with Mrs. Bertie Sutton a number of times—he didn't know how many. He was asked if he registered on October 9, 1925 with the complainant as man and wife. His answer was "I do not believe so." He was then asked "If you have so registered, please give your reason for so doing? Ans. If I had done so, it could have only been that I was under the influence of liquor."

Mrs. Branch testified that she knew the complainant and knew Jones, and that Jones introduced Mrs. Sutton as his wife. Neither Mr. nor Mrs. Branch were asked if the complainant and Mrs. Jones occupied room 217 together on the night of October 9, 1925. They might not have known. The complainant contradicts Mrs. Branch that Jones was introducing complainant to Mrs. Branch, the proprietress of the Mayfair Hotel at Searcy, as Mrs. Jones, or as his wife.

A. R. Jones had a partner who spent part of his time at the Mayfair Hotel in Searcy, Arkansas. This partner, or gentlemen interested in the business with Jones, was F. H. Garcelon. Garcelon testified that Jones roomed with him (Garcelon) at the Mayfair Hotel while Garcelon was there. This witness testified that he saw nothing that would indicate any immorality in any way upon the part of Mrs. Sutton. This witness does not state that he was in the Mayfair Hotel October 9, 1925. He testified that he saw complainant and Jones together at the Mayfair Hotel once, and saw nothing wrong as to their conduct. This witness's deposition was taken in Kansas City, Missouri, June 26, 1926.

There is another circumstance relied upon by the defendant and cross-complainant to establish complainant's guilt and her illicit relations with A. R. Jones, and that is, they occupied the same apartment in the city of Little Rock, Arkansas. It appears that a Dr. Porter allowed Jones and the complainant to have his apartment in Little Rock while he (Dr. Porter) was away on some vacation. It further appears that there were three bedrooms in this apartment and the complainant and a Mrs. Carnes, who lived in Oklahoma, and who had visited complainant, occupied one bedroom, the little boy, Ernest Jr., A. R. Jones and two other men occupied the other two bedrooms. Complainant testified she didn't know with whom her little boy slept during the time that the six were occupying Dr. Porter's apartment. These other two men were the witnesses Garcelon and one L. D. Hamacher. Mr. Hamacher was closely associated with A. R. Jones in the oil business, and it appears that this party spent a great deal of his time during the year 1925 at the Mayfair Hotel in Searcy, Arkansas. He testified that he saw A. R. Jones in Searcy, Arkansas, some six or eight times during the year 1925, and he was asked:

"Q. If you state you know the said A. R. Jones and that you have knowledge of his being in Searcy, Arkansas, during 1925, state, if you know, where he lived while in Searcy, and give the name of the person with whom he roomed, if anyone? Ans. Mayfair Hotel; at times shared room with me."

So it appears that Jones sometimes shared the room with Hamacher in the Mayfair Hotel and at other times with his friend and associate Garcelon, but neither of these associates testified that he shared a room with them on October 9, 1925. The complainant testified she did not know where the said A. R. Jones spent the night of October 9, 1925, when she spent the night in room 217 of the Mayfair Hotel.

Mrs. Carnes, who it was stated lived in Muskogee, Oklahoma, and who visited the complainant and spent awhile with her at the Porter Apartments in Little Rock, did not testify. These are, substantially, the facts as shown by the record. Most of the proof, with the exception of the testimony of complainant and defendant, was taken upon interrogatories, and the depositions are not satisfactory.

The charge of adultery, as a general rule, has to be proven and established by circumstantial evidence. It is like establishing fraud. Those who are guilty do not announce their intention, but it is the general rule that the act of adultery may be sufficiently established by proof of circumstances from which a jury or court may reasonably infer the guilt of the party in all cases where adultery is charged. It is competent to prove the acts, conduct and situation of the parties charged with the offense of adultery. In R. C. L., Vol. 9, pp. 328-329, we find the following principles announced: "As to the quantum of proof required to establish a charge of adultery the prevailing rule is that as in other civil cases such fact need be proved only by a preponderance of the evidence; and it has been held error to instruct that adultery must be shown by evidence which is 'clear, cogent and convincing.' A fortiori the charge need not be proven beyond a reasonable doubt, though it involves a crime. In view of the impropriety of calling children of tender age to testify against their mother to establish an offense against her chastity, and since the testimony of such children to acts which will naturally be construed by their prepossessions and immature and incorrect notions is of slight value, it has been held that a divorce should not be granted to the husband for the adultery of the wife upon the sole testimony of young children of the parties."

"Circumstantial evidence may be sufficient to prove the alleged adultery. As said by Lord Stowell, in an early English case (Loveden v. Loveden, 2 Hag. Con., 2): 'It is not necessary to prove the direct fact of adultery; for, being committed in secret it is seldom susceptible of proof except by circumstances which, however, are sufficient whenever they would lead the guarded discretion of a rea-

sonable and just man to a conclusion of guilt.' The courts must, perforce, take such evidence as the nature of the case permits—circumstantial, direct or positive—and bring to bear upon it the experience and observations of life and thus weighing it with prudence and care give effect to its just preponderance. Still, it has been said in weighing the effect of such evidence that it must be so clear and strong as to carry conviction of the truth of the charge, and if it does no more than raise a suspicion of chastity it is ·insufficient, and that the circumstances must lead to it not only by a fair inference but as a necessary conclusion. When, however,· adulterous disposition is shown to exist between the parties at the time of the alleged act, then mere opportunity together with comparatively slight circumstances showing guilt may be sufficient to justify the inference that criminal intercourse has actually taken place."

To justify divorce for adultery, a preponderance of the fact is sufficient; it need not be clear, cogent and convincing. Ellett v. Ellett, 157 N. C., 161, 72 S. E., 861, 39 L. R. A. (N. S.), 1135; Taft v. Taft, 80 Vt., 256, 67 Atl., 703, 12 Ann. Cas., 959.

We are of opinion that cross-complainant has, by a preponderance of the evidence, established his charge of adultery. The conduct and the circumstances whereby the complainant associated herself with A. R. Jones are such as, in our opinion, would lead a reasonable man to the conclusion that the complainant had been unfaithful to her marriage vows with the defendant and cross-complainant.

It results that the assignments of error of cross-complainant and appellant are sustained and the decree of the lower court is reversed and a decree granting the cross-complainant an absolute divorce be entered; that cross-complainant also be given the care and custody of Ernest W. Sutton, Jr., for the present, with the provision and condition that the complainant can see said child at such reasonable and proper times as conditions may warrant; and for the purpose of carrying out this provision of the decree the cause will be remanded to the chancery court of Shelby county, and will be retained on the docket. The visitation of complainant to her child, Ernest W. Sutton, Jr., will be made within the jurisdiction of the chancery court of Shelby county. The child is not to be removed by the mother beyond the jurisdiction of said court.

It appearing that the complainant has no property whatever, the cross-complainant and appellant will be taxed with the cost of the appeal and the cost accrued in the lower court, except the state and county tax upon litigation, and the cost of taking complainant's depositions will be paid by the complainant.· The appellant will recover of complainant all of the costs of the cause, including cost of appeal, for which execution will be awarded, but judgment will be entered over against appellant and his surety on appeal bond for the cost

accrued in the lower court and in this court, except the state and county tax of $5 accrued in the lower court and the state tax on litigation accrued in this court.

Heiskell and Senter, JJ., concur.